(No. 6537.   December 7, 1938.)

STATE, Respondent, v. RONALD V. CRANSTON and FORD C. CLIFF, Appellants.

[85 Pac. (2d) 682.]

Elam & Burke and Delana & Delana, for Appellants.

J. W. Taylor, Attorney General, R. W. Beckwith, E. G. Elliott, Lawrence B. Quinn and D. W. Thomas, Assistant Attorneys General, for Respondent.

AILSHIE, J.—This is an appeal from a conviction under the Sunday closing statute, sec. 17–2503, I. C. A. The statute was originally enacted by the legislative session of 1907 (1907 Sess. Laws, p. 223). As originally enacted the section (2) here involved read as follows:

"It shall be unlawful for any person or persons in this State to keep open on Sunday for the purpose of any business, trade, or sale of goods, wares, or merchandise, any shop, store,

building, or place of business whatever: *Provided,* that hotels and restaurants may furnish lodging and meals, and *Provided,* That this section shall not apply to livery stables, or to stores in so far as the sale of medicines or sick room supplies are concerned, or to undertakers while providing for the dead, or to news stands in so far as the quiet sale and delivery of daily papers and magazines is concerned, nor to sale of non-intoxicating refreshments, candies and cigars.

"Any person or persons violating this section shall be guilty of a misdemeanor and on conviction thereof said offender shall be fined in any sum not less than twenty-five dollars ($25.00) nor more than one hundred dollars ($100.00), or shall be imprisoned in the county jail not to exceed thirty days and upon a second conviction by both such fine and imprisonment."

The validity of this act was sustained in *State v. Dolan,* 13 Ida. 693, 92 Pac. 995, 14 L. R. A., N. S., 1259, and followed in *In re Jacobs,* 13 Ida. 720, 92 Pac. 1003. In 1911 this statute was amended (1911 Sess. Laws, chap. 101, p. 344) in reference to the sale of non-intoxicating refreshments, as follows: "nor to the sale of non-intoxicating refreshments, when the same are not sold or dispensed over a saloon bar, nor to candies, fresh fruits and cigars." Subsequent to the amendment of 1911 the constitution was amended so as to prohibit the manufacture and sale of intoxicating liquors (art. 3, sec. 26, Const.) Consequently the law no longer recognized a "saloon bar" and *no kind of refreshments* could be lawfully dispensed therefrom. The act here in question was again amended in 1921 and the amendment dropped the part immediately following the word "refreshments" which related to sales "over a saloon bar" and added further exemptions, so that the act after amendment reads as follows:

"It shall be unlawful for any person or persons in this State to keep open on Sunday for the purpose of any business, trade, or sale of goods, wares, or merchandise, any shop, store, building, or place of business, whatever: *Provided,* That *hotels and restaurants may furnish lodging and meals;* and *Provided,* That this section shall not apply to livery stables, *garages, automobile service station or stores* insofar as the sale of medicines or sick room supplies is concerned, or to

undertakers while providing for the dead, or to news-stands in so far as the quiet sale and delivery of daily papers and magazines is concerned, *nor to the sale of nonintoxicating refreshments, . . . . nor to candies, fresh fruits* and cigars, nor to *bakeries* insofar as the quiet sale of their products is concerned, or shoe shining stands, *or common carriers insofar as the receipt, transportation or delivery of express shipments of ice cream, bakery goods, dairy or perishable farm products is concerned.* Any person or persons violating this section shall be guilty of a misdemeanor, and on conviction thereof, shall be fined in any sum not less than $25 nor more than $100, or shall be imprisoned in the county jail not to exceed 30 days, and, upon a second conviction, shall be punished by both such fine and imprisonment.'' (Italics supplied.) and now comprises sec. 17–2503, I. C. A.

In the meanwhile the state has had a local option law (1909 Sess. Laws, p. 9), constitutional and statutory prohibition (sec. 26, art. 3, Const., amended Nov. 6, 1934, 1935 Sess. Laws, p. 375) and is at present itself engaged in buying, selling and dispensing liquor (Idaho Liquor Control Act, 1935 Sess. Laws, chap. 103, p. 222), and yet the Sunday Closing Law still remains on the statute books in substantially the same terms as originally enacted with the exceptions only as above noted. In other words, for a period of practically 32 years, during which time constitutions, laws, customs, practices and even morals have undergone the greatest change ever experienced in the same length of time in the history of America, no repeal nor substantial amendment, other than as above indicated, has occurred to change the act now under attack.

The same constitutional objections are now urged against the act that were advanced by a number of the leaders of the bar in 1907 when *State v. Dolan* was before this court. After a very thorough consideration of the objections urged, this court then held the objections not well taken and sustained the constitutionality of the act. That was the unanimous decision of the court as then constituted. (See, also, *In re Jacobs, supra; In re Speer*, 53 Ida. 293, 23 Pac. (2d) 239, 88 A. L. R. 1086.) Now after the lapse of nearly 32 years we are asked to reopen the question and overrule the

unanimous opinion of our predecessors, partly if not chiefly, on the grounds as stated in appellant's brief: "That times and conditions have changed," since that decision was announced. That argument might (or might not) furnish a persuasive reason for the legislature amending or repealing the act but it affords no reason whatever for holding an act unconstitutional which was once approved on judicial review and has stood unchallenged for nearly a third of a century since such decision was announced. We are not disposed to disturb or depart from the decision in *State v. Dolan*. (See *In re Speer, supra*.)

The further contention of appellants that, "It is common knowledge that with respect to many phases of the Sunday Closing Law, it has absolutely been ignored" (if true, which we doubt) has no place for consideration in the courts in passing on the validity of the statute. That is purely a public governmental question to be dealt with by the people and the legislature. We may construe but have no power or authority to amend or repeal statutes. Nor does the change of public opinion (if such be the case) with reference to a law have any proper place in the consideration by the courts of the power of the legislature to enact the law or the duty of the courts and administrative officers to enforce it.

The people are supreme. They elect the legislature biennially and have the right of petition to the legislature and the legislature in turn has the right to heed their petition and amend or repeal any law or laws. If the Sunday Closing Law is unwise, antiquated, unenforced or unenforceable (all non-judicial questions) the legislature is the place for those to go who are dissatisfied and there disclose their grievances. More appeals to the law-making bodies for amendments and repeals of what are deemed by many to be ineffective or bad laws and less urgency upon courts to modify or hold invalid such laws would go a long way toward the orderly and acceptable administration of all laws. The administration of public as well as personal justice would profit immeasurably thereby. The constitutionality of the act is a closed issue in this court. (See *In re Speer*, 53 Ida. 293, 23 Pac. (2d) 239, 88 A. L. R. 1086.)

It is next urged that although the act be held constitutional, still it does not prohibit the *keeping open of a grocery store for the sale of "cheese, bread and butter" for which appellants were convicted.* This contention rests solely on the assumption that, cheese, bread and butter are "refreshments." In support of this assumption we are referred to Funk and Wagnalls New Dictionary and Webster's International Dictionary, second edition, wherein "refreshment" is defined as "That which refreshes, especially (specifically) food and drink." We would have no difficulty in agreeing with counsel in this respect were it not for the fact that the meaning of the word as used in this statute is limited, hedged about and circumscribed by other words and phrases that have well recognized meaning and which render it reasonably certain that its authors had in mind liquids only when they used the word "refreshments" in this act. The word "refreshments" as used in the statute is *immediately* preceded by the modifying word "non-intoxicating."

Now, evidently the average legislator as well as the ordinary citizen would think of a *non-intoxicating refreshment* as a *liquid* of *some kind,* immediately ready to drink. It would never occur to him, unless suggested by someone claiming special knowledge on the subject, that a *refreshment* could be *intoxicating* while composed of such solid substance (as bread in this case) that it would have to be cut, masticated, swallowed and dissolved before the user could get any alcoholic results from his "refreshments." Furthermore, the exemption of "non-intoxicating refreshments" is followed by the words "nor to candies, fresh fruits and cigars". Again, if the word "refreshments" was intended to cover both "food" and "drink," we fail to see why the legislature would have thought it necessary to specially name candies and fresh fruits as also exempt.

If appellants' construction is correct, candies and fresh fruits would have been exempt without any special mention. In other words, if appellants' contention is correct, why should the legislature have specially named candies and fresh fruits as exempt and not include cheese, bread and butter. If the reply to this be that they had already authorized the sale and serving of cheese, bread and butter by authorizing hotels and

restaurants to serve meals and authorizing the delivery of bakery and dairy products, then the rebuttal reply is that the very fact of these special exemptions by the legislature furnishes most persuasive reason why they did not intend to include such articles within the other exemption of ''nonintoxicating refreshments.''

The act is clearly the result of the exercise of the police power and was undoubtedly adopted in the interest of the public welfare. It was thought by the legislature and concurred in by both employers and employees alike, that closing up of as many places of business regularly on a periodic date, in so far as the public necessities and safety would permit, would promote both the physical and mental health, happiness and welfare of the great body of men and women whose employment keeps them confined indoors. In making exemptions of places for the sale of certain necessaries it was not deemed necessary to exempt for such purpose all the places of business where such articles *might or could be sold;* to do so could easily render enforcement impossible. On the other hand the exemptions were very properly limited to places primarily established for such sales or where the articles are made or produced. Such designation constitutes no unjust discrimination.

The judgment is affirmed.

Holden, C. J., and Budge and Givens, JJ., concur.

Morgan, J., deeming himself disqualified, did not participate in the decision.