Zimmerman, J.
All the defendants challenge the constitutionality and validity of Section 3773.24, Revised Code, enacted by the General Assembly in the exercise of its police power. That section, as it is pertinent here, reads as follows:
“No person who is over 14 years of age shall engage in common labor or open or cause to be opened, a building or place for transaction of business, or require a person in his employ or under his control to engage in common labor on Sunday. * * *
“This section does not apply to work of necessity or charity, and does not extend to persons who conscientiously observe the seventh day of the week as the Sabbath, and abstain thereon from doing things prohibited on Sunday.”
It is axiomatic that courts may not inquire into the policy which motivated the enactment of legislation, and as stated in the first paragraph of the syllabus in the case of State, ex rel. Dickman, a Taxpayer, v. Defenbacher, Dir., 164 Ohio St., 142, 128 N. E. (2d), 59, “an enactment of the General'Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.”
Sunday closing laws have generally been upheld as constitutional and valid against a variety of attacks, such as, that they constitute class legislation, that they are too uncertain, that they violate the constitutional rights of citizens as to equal privileges and immunities, that they violate the right of life, liberty or the pursuit of happiness, and that they violate the constitutional right of freedom of religion. 50 American Jurisprudence, 803, Section 5; and 83 Corpus Juris Secundum, 800, Sunday, Section 3.
Many years ago in a case involving a predecessor statute to present Section 3773.23, Revised Code, Judge Minshall, writ *524 ing the opinion in the case of State v. Powell, 58 Ohio St., 324, 340, 50 N. E., 900, 901, 41 L. R. A., 854, made the following observations :
“The policy of Sunday laws is based upon the observed fact, derived from long experience and the custom of all nations, that periods of rest from ordinary pursuits are requisite to the well-being, morally and physically, of a people. * * * This is the foundation and policy of all statutes regulating the observance of a day of rest; and whether the day selected is one consonant to the religious views of a portion of the people or not, does not affect the validity of the regulation, where no religious observance is enjoined.”
Section 3773.24, Bevised Code, in no way interferes with the freedom of religious worship or the free exercise of religious beliefs, nor was it designed to. As was said by Judge Thurman in the early case of Bloom v. Richards, 2 Ohio St., 387, 392:
“Wisdom requires that men should refrain from labor at least one day in seven, and the advantages of having the day of rest fixed, and so fixed as to happen at regularly recurring intervals, are too obvious to be overlooked. It was within the constitutional competency of the General Assembly to require this cessation of labor, and to name the day of rest. It did so by the act referred to, and, in accordance with the feelings of a majority of the people, the Christian Sabbath was very properly selected. But, regarded merely as an exertion of legislative authority, the act would have had neither more nor less validity had any other day been adopted.”
Compare Stanfeal v. State, 78 Ohio St., 24, 84 N. E., 419, 14 Ann. Cas., 138. And see 38 Ohio Jurisprudence, 349, Section 10.
It is to be noted that excepted from the operation of the statute in issue is “work of necessity or charity.” Obviously, no fixed and unvarying definition of “necessity” as used in the statute can be given. That term is an elastic one. Certainly, it does not mean that which is wholly indispensable, but it does mean something more than that which is merely needful, desirable or convenient. For example, it is hardly a necessity to open a place of business on Sunday to make available to a purchaser an article which in the exercise of reasonable foresight *525 he could have bought on a preceding day. To escape the inhibitions of the statute, labor performed or work done must come within the statutory exceptions, and whether it does is ordinarily a question of fact largely dependent on the circumstances surrounding the particular case. In the cases before us, all the lower courts determined that the element of necessity was lacking and we find no sufficient reason for overturning those determinations.
Another argument made is that Section 3773.24, Revised Code, is unconstitutional because it is a law for the promulgation of religious beliefs. True, that section by its terms is not applicable to “persons who conscientiously observe the seventh day of the week as the Sabbath, and abstain thereon from doing things prohibited on SundayHowever, the evidence in these cases under consideration does not disclose that the business places involved closed on any day of the week in the observance of a religious belief or for any other reason, and, therefore, the defendants are hardly in a position to attack the statute on the constitutional grounds asserted. Humphrey Chevrolet, Inc., v. City of Evanston, 7 Ill. (2d), 402, 131 N. E. (2d), 70; State v. Grabinski, 33 Wash. (2d), 603, 206 P. (2d), 1022. But to face the problem squarely, we entertain the view, in line with former decisions of this court already referred to ap.d with those of other courts which have interpreted statutes similar to Section 3773.24, Revised Code, that such section does not represent a measure to enforce or promulgate religious observances.
The further argument is made that Section 3773.24, Revised Code, has been so undermined by exceptions that it is no longer sustainable. Our attention is directed to the laws which permit the sale of intoxicating liquors until 2:30 a. m. on Sundays and the sale of beer on that day having an alcoholic content of no more than 3.2 per cent, to those which sanction the playing of baseball games and the exhibition of motion pictures after noon on Sundays, to those which sanction trapshooting on Sunday afternoons when conducted under the auspices of a recognized club, and to others which sanction Sunday activities of a secular nature. It is claimed that these exceptions operate in such a discriminatory way as to nullify Section 3773.24, Re *526 vised Code, and that such section constitutes a denial of the equal protection of the laws and represents class legislation.
Contentions of that sort are not new and have frequently been rejected. Sunday observance laws are in force in most of the states, and generally certain activities have been excepted from their coverage. These Sunday laws are sustained quite uniformly upon the theory that the selection of subjects for exemption is peculiarly a matter of legislative discretion. Fundamentally, discrimination is the very essence of classification and is not objectionable unless founded on distinctions which the courts are compelled to pronounce unreasonable or purely fictitious.
The holdings of probably a majority of the courts are that the lawmaking department of a state has the constitutional power to make classifications and selections of what should or should not be prohibited on Sunday, so long as those classifications are not arbitrary, capricious or unreasonable and so long as they do not discriminate among the same classes or kinds of pursuits. See annotations, 46 A. L. R., 290, and 119 A. L. R., 752. For its reasoning, attention is directed to the case of Gundaher Central Motors, Inc., v. Gassert, Jr., Dir., 23 N. J., 71, 127 A. (2d), 566 (appeal dismissed for want of a substantial federal question, 354 U. S., 933, 1 L. Ed. [2d], 1533, 77 S. Ct., 1397). If, for instance, a law enforcement agency should invoke Section 3773.23, Revised Code, with respect to a football game played after noon on Sunday, the legality of such action might well be challenged, in face of the statute which permits Sunday baseball. See Carr v. State, 175 Ind., 241, 93 N. E., 1071, 32 L. R. A. (N. S.), 1190, holding the exemption of the game of baseball from the Sunday law a valid enactment, and see annotation, 24 A. L. R. (2d), 813. At least one court has held that engaging in a sport, specifically baseball, does not constitute “labor” within the prohibition of a Sunday law. Territory of New Mexico v. Davenport, 17 N. M., 214, 124 P., 795, 41 L. R. A. (N. S.), 407.
Some of the defendants place reliance on the cases of Olds v. Klots, 131 Ohio St., 447, 3 N. E. (2d), 371, and City of Cincinnati v. Correll, 141 Ohio St., 535, 543, 49 N. E. (2d), 412, both of which had to do with municipal ordinances as distin *527 guished from state laws. The ordinances involved in the cited eases fixed the hours on week days during which lawful business establishments might remain open, and this court held such ordinances to be unreasonable, arbitrary and discriminatory because they were opposed to basic freedoms and rights constitutionally guaranteed and constituted an unauthorized exercise of the police power, since they bore no real and substantial relation to the health, safety, morals or general welfare of the public.
In keeping with the above holdings, it is generally recognized that a municipality in the exercise of its police power may not impose limitations, burdens and restrictions which impair the right to conduct lawful businesses, where the elements of public health, morals or safety are lacking.
In contrast, Section 34, Article II of the Constitution of Ohio, reads:
“Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employees; and no other provision of the Constitution shall impair or limit this power. ’ ’
Section 3773.24, Revised Code, is an enactment adopted by the General Assembly, is operative throughout the entire state and sets aside a specifically designated day of each week for the cessation of secular activities. Independent of the quoted constitutional provision, wisdom- and common experience have long demonstrated that one full day of rest in seven is essential to the well being of all individuals, and that its observance does have a vital bearing on the health, safety, morals and general welfare of the citizenry.
We think the Klotz and Correll cases are clearly distinguishable from the instant ones, and that those cases are in no way decisive here.
As a part of his inaugural address delivered on March 4, 1869, President Ulysses S. Grant said:
“I know no method to secure the repeal of bad or obnoxious laws so effective as their stringent enforcement.”
Whether in this fast-moving modern age the Sunday closing law is outmoded, obsolete and unrealistic and should be eradicated is essentially a legislative and not a judicial problem. Of course, the recognition and enforcement of the law *528 depend largely upon the sentiment in a locality and the attitude of the law enforcement agencies of that community. But the fact remains that, even though such law may be inappropriate to existing conditions, it is on the statute books as a living piece of legislation, and there are many who would strenuously oppose its repeal. See State v. Cranston, 59 Idaho, 561, 85 P. (2d), 682.
Various counsel attack the legality of the convictions of the defendants on other grounds, including the claim that the evidence adduced is insufficient to sustain the convictions. We have examined these contentions and find them without substantial merit.
In our opinion, no good or adequate reasons are discernible for reversing the judgments of the Courts of Appeals in the several causes under review, and they are, accordingly, affirmed.

Judgments affirmed.

Weygandt, C. J., Stewart, Taet, Matthias, Bell and Herbert, JJ., concur.