314 So.2d 83

**Joe SIMONETTI**

v.

**CITY OF BIRMINGHAM.**

**6 Div. 680.**

Court of Criminal Appeals of Alabama.

Feb. 6, 1975.

Rehearing Denied April 1, 1975.

Virgil K. Sandefer, Birmingham, for appellant.

William C. Walker, Birmingham, for the City of Birmingham.

HARRIS, Judge.

Appellant was convicted in the Recorder's Court for violating Birmingham's Sunday closing law and he appealed to the Circuit Court of Jefferson County. The City filed a complaint and appellant filed a mo-

tion to quash and also filed a demurrer. The demurrer was sustained. The City, thereupon, filed an amended complaint as follows:

"AMENDED COMPLAINT

| | |
|---|---|
| "CITY OF BIRMINGHAM, a municipal corporation<br><br>PLAINTIFF<br><br>VS.<br><br>JOE SIMONETTI,<br><br>DEFENDANT | IN THE JEFFERSON COUNTY CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT CASE NO. 33658 |

"Comes the City of Birmingham, Alabama, a municipal corporation, and complains that Joe Simonetti, a merchant or shopkeeper, not a druggist, within twelve months before the beginning of this prosecution on to-wit: July 30, 1972, and within the City of Birmingham, at to-wit: 342 Finley Avenue, West, did keep open store, to-wit: a grocery store, on Sunday, and did then and there have on the premises more than four employees on duty, contrary to and in violation of Section 36–56 of the General City Code of Birmingham of 1964 as it embraces the words, language and meaning of Section 420, Title 14, 1940 Code of Alabama, Recompiled 1958 as amended and exception provided by Section 1015(16), Appendix, 1940 Code of Alabama, Recompiled 1958.

"FILED IN OPEN COURT This 6 day of April 1973, JULIAN SWIFT, CLERK CIRCUIT COURT By Jennings Duke Deputy Clerk."

WILLIAM C. WALKER
(Signed)

Appellant filed an amended motion to quash incorporating, by reference, the grounds filed to the original complaint, and added new grounds. He also filed a demurrer to the Amended Complaint. In order to have a better understanding of appellant's contentions with respect to his motion to quash and the wide range of testimony the trial judge permitted, we think it well to set forth all the grounds of the motion to quash filed to the original complaint as well as the additional grounds of his motion to the Amended Complaint:

"Comes now the defendant, Joe Simonetti, and moves this Honorable Court to quash the Affidavit of Complaint, the basis of the prosecution against him, and as grounds of said Motion assigns the following, separately and severally:

"(1) For that the offense charged in said Affidavit of Complaint, is the violation of a local county law which has not been enacted by the City of Birmingham.

"(2) For that the offense with which the defendant is charged as reported in the Code of Alabama, Appx. Sec. 1015(16), is vague and unenforceable in that it fails to define 'employees' or the duties that may be performed by exempt employees and non-exempt employees.

"(3) For that said Act upon which the charge is based is vague and uncertain in that said Act states 'The Legislature further finds that there is a public necessity for the purchase on Sunday of merchandise usually sold in grocery stores and that this necessity must be met but that reasonable restrictions as set out above should be placed thereon.' There is no provision in said Act permitting the grocer, in order to meet the public need, to use the number of employees needed to satisfy this need. The contrary appears in said Act.

"(4) For that said Act as written makes that which is otherwise lawful. Mainte-

nance crews, office personnel, inventory crews, etc. may work on Sunday. Under said Act these otherwise exempt employees are treated as employees thereby resulting in arrest and prosecution for performing an otherwise lawful Act on Sunday.

"(5) For that said Act does not exempt the owners of the business nor their families inasmuch as there is no definition of 'employee' in said Act.

"(6) The purpose of the Act is defeated by the employee limitation set out in said Act, thereby creating a situation where the public need to purchase groceries on Sunday cannot be achieved without prosecution under said Act.

"(7) For that the phrase in said Act in Section 1 '—To purchase on Sunday goods usually and normally sold in grocery stores subject to reasonable restrictions on the number of employees that may be employed in such stores selling such goods on Sunday' is vague and ambiguous in that it is not clear whether the employee restriction is limited to employees actually engaged in the sale of groceries on Sundays or whether it extends to employees not engaged in selling groceries on Sunday, such as security guards, maintenance crews, inventory crews, clean up crews, and office personnel, a number of whom would ordinarily work on Sunday.

"(8) For that said Act does not make provision for crew changes during the day whereby employees who have completed their work may check out while new employees begin their duty. Without this provision, under said Act, a store would have to close temporarily for its crew changes much to the annoyance of the general public who, under the Act, it is to serve on Sunday.

"For the grounds set out hereinabove defendant prays that this Honorable Court will quash the Affidavit of Complaint, the basis of his prosecution.

\*    \*    \*    \*    \*    \*

"(1) By assigning, separately and severally, the grounds set out in the Motion to Quash Affidavit of Complaint heretofore filed herein in connection with the Complaint filed by the City of Birmingham.

"(2) The City of Birmingham has engaged in discriminatory enforcement of Title 14, Section 420 of the Code of Alabama, as amended, thereby depriving the defendant of equal protection guaranteed to him by the Constitutions of the United States of America and the State of Alabama.

"(3) The Sheriff of Jefferson County, Alabama, has been engaged in discriminatory enforcement of Title 14, Section 420, 421 and 422 of the 1940 Code of Alabama recompiled in 1958, as amended, thereby depriving the defendant of equal protection guaranteed to him by the Constitutions of the United States of America and of the State of Alabama.

"(4) That the City of Birmingham acting through its Police Department prior to the arrest of this defendant, and since then has followed a policy of selective enforcement of Title 14, Sections 420, 421, and 422 of the 1940 Code of Alabama recompiled in 1958 as amended, thereby depriving the defendant of equal protection guaranteed to him by the Constitutions of the United States of America and the State of Alabama.

"(5) The City of Birmingham has engaged in discriminatory enforcement of Title 14, Section 420, 421 and 422 of the 1940 Code of Alabama recompiled in 1958 as amended, both prior to and since the arrest of this defendant, thereby depriving the defendant of his constitutional rights as guaranteed to him by the Constitutions of the United States of America and the State of Alabama.

"(6) For that the City of Birmingham contrary to Title 14, Sections 420, 421 and 422 of the 1940 Code of Alabama as amended, has both prior to and since the arrest of this defendant engaged in a conspiracy with its lessees and conces-

sionaries whereby said lessees and concessionaries who are merchants or shopkeepers the same as this defendant were permitted to operate with immunity from prosecution for violations of the foregoing statutes while said City of Birmingham has enforced said statutes against this defendant, his agent, servants or employees.

"(7) For that the City of Birmingham with actual knowledge of violations by other merchants or shopkeepers located within the City of Birmingham, of Title 14, Sections 420, 421 and 422 of the 1940 Code of Alabama recompiled in 1958 as amended, has failed and refused and continues to fail or refuse to enforce said statutes in a fair, equal and nondiscriminatory basis.

"(8) For that the Chief of Police of the City of Birmingham after having received written notice of violations of Title 14, Sections 420, 421 and 422 by merchants and shopkeepers in the City of Birmingham has failed or refused to cause the enforcement of said statutes in an equal, fair, impartial and nondiscriminatory manner.

"(9) For that the City of Birmingham, acting through its lessees by its written leases with them and required said lessees who are merchants or shopkeepers to remain open on Sunday in violation of Title 14, Sections 420, 421 and 422 of the 1940 Code of Alabama recompiled in 1958, as amended, and has afforded said lessees immunity from prosecution for such violations by requiring the Police Department not to make arrests.

"(10) For that the City of Birmingham in furtherance of its conspiracy with its lessees or concessionaries in order to afford them, or attempt to afford them, further immunity from violation of Title 14, Sections 420, 421 and 422 of the 1940 Code of Alabama recompiled in 1958, as amended, did through its City Council and through its Mayor and at the request of its City Attorney cause said

City Council to adopt an Ordinance, contrary to the provisions of Title 14, Sections 420, 421 and 422 of the 1940 Code of Alabama recompiled in 1958 as amended and contrary to the laws of the State of Alabama whereby immunity could be granted to its lessees and concessionaires who were violating said Title 14, Sections 420, 421 and 422. Said Ordinance is Ordinance Number 73–17 approved by the Mayor of the City of Birmingham on February 16, 1973.

"(11) For that the City of Birmingham acting by and through its Police Chief and the Police Department of the City of Birmingham have arrested for violation of said Title 14, Sections 420, 421 and 422 only persons of foreign extraction or agents, servants or employees of foreign extraction while permitting other nationality groups to violate said statutes with immunity from prosecution by the City of Birmingham."

The record in this case comprises four volumes and contains about 800 pages of testimony, motions and exhibits. This case presents the age-old and ever-recurring troublesome problems associated with trying to enforce the "blue laws" on a nondiscriminatory basis so as to comply with the Due Process and Equal Protection clauses of the Fourteenth Amendment to the Constitution of the United States.

As historical background, we cite The New Encyclopedia Britannica for a definition of the "blue laws" in U. S. history: (a) "a general term for colonial laws forbidding secular activities on Sunday. The name was originally derived from an account printed on *blue paper* published in 1781, purporting to list the Sabbath regulations at New Haven, Connecticut. Strictest in Puritan, Bible-oriented communities, blue laws usually forbade regular work on Sunday, plus any buying, selling, travelling, public entertainment, or sports. To some degree, similar laws existed in all the American colonies. In general, they lapsed after the U.S. War for Independence, but their influence has persisted in modern

times wherever public activity on Sunday is regulated." (Emphasis supplied).

Before Alabama was admitted into the Union of States, the Toulmin Digest of 1823 was compiled by appointment, and under the authority of the General Assembly of the Mississippi Territory. We learn from a reading of this Digest that the legislative council and house of representatives of that Territory enacted in 1803 that "no worldly business or employment, ordinary servile works (works of necessity or charity excepted), no shooting, sporting, hunting, racing, fiddling, or other music for the sake of merriment, nor any kind of playing, sports, pastimes, or diversions, shall be done, performed or practiced, by any person or persons within this Territory on the Christian sabbath, or first day of the week, commonly called Sunday." It is further provided that "no merchant or shopkeeper or other person, shall keep open store, or dispose of any wares or merchandise, goods or chattels on the first day of the week, commonly called Sunday, or sell or barter the same." The act further provides "that no wagoner, carter, drayman, drover, butcher, or any of his slaves or servants shall ply or travel with his wagon, cart or dray, or shall load or unload any goods, wares, merchandise or produce, or drive cattle, sheep or swine in any part of the Territory, on the first day of the week called Sunday." Toulmin's Digest, pp. 216–217.

The Toulmin Digest was in full force and effect with the beginning of statehood. It has undergone many changes, modifications and restatements. The first time that "druggists" were excepted from the provisions of the Sunday Closing Laws appeared in the Code of 1852, Section 3303, providing:

"Any person who engages in shooting, hunting, gaming, racing, or in any other sport, diversion, or pastime, on Sunday, or any merchant, or shop-keeper, *except druggist,* who keeps open store, or disposes of any goods on Sunday, for each offense must be fined, by any justice be-fore whom complaint is made, twenty dollars." (Emphasis supplied).

Now we have Title 14, Section 420, Code of Alabama 1940.

The above section is so broad and all inclusive as to what acts are permitted and what are prohibited on Sundays that one would think nothing more need be said. But the Legislature, in its wisdom, saw fit to pass Act No. 431, General Acts of Alabama 1966, Special Session, page 576, effective November 15, 1966, as follows:

"Section 1. (a) This Act shall apply to all counties having a population of 500,000 or more according to the last or any succeeding federal census.

(b) Declaration of Legislative finding and policy: The maintenance of the public health is of vital importance to the general welfare of the State and its people. This is particularly true where there are large concentrations of population. For the protection of the public health and general welfare it is deemed essential that one day be set aside each week as a day of rest and relaxation in counties to which this Act applies. This can best be accomplished and the enforcement thereof can best be policed by setting aside Sunday which is generally recognized and observed as a day of rest. Section 420 Title 14 Code of Alabama, 1940, as amended, has made unlawful the general performance of labor and other activities on Sunday and has provided penalties for the violation thereof subject to certain enumerated exceptions which are deemed by the Legislature to be reasonable and necessary. The Legislature further finds and declares that in order to enjoy such a day of rest and relaxation that the public should be given the right as an additional exception to said Section 420 to purchase on Sunday goods usually and normally sold in grocery stores subject to reasonable restrictions on the number of employees that may be employed in such stores selling such goods on Sunday. It

is further the finding of the Legislature that a reasonable restriction on the number of employees would be to permit to remain open on Sunday for the sale of such goods only those stores that have no more than four employees on duty at any one time on Sunday. The Legislature further finds that there is a public necessity for the purchase on Sunday of merchandise usually and normally sold in grocery stores and that this necessity must be met but that reasonable restrictions as set out above should be placed thereon.

"Section 2. It shall be lawful for any grocery store to remain open on Sunday in each · County in the State having a population of 500,000 or more according to the last or any succeeding federal census providing that such grocery store does not have on duty in such store more than four employees at any one time on Sunday; provided that each such grocery store shall first obtain a special license to operate on Sunday from the license issuing officer of such County. The license issuing officer of such County shall issue a license only to such individual grocery stores or outlets as shall pay a license fee of $25 and only to such individual grocery stores or outlets in each community as are determined to be required by the public convenience and necessity. All license fees shall be paid into the general fund of such County.

"Section 3. All parts of general or local laws in conflict herewith are hereby repealed.

"Section 4. If any clause, provision or section of this act shall be held invalid and unenforceable by any Court of competent jurisdiction such holding shall not invalidate or render unenforceable any other clause, provisions or section thereof.

"Section 5. This Act shall become effective November 15, 1966.

"Approved September 12, 1966.

"Time: 6:21 P.M."

Pursuant to this Act the City of Birmingham passed a "reference ordinance" to embrace the words, language and meaning of Title 14, Section 420, Code of Alabama 1940, and included the exception provided by Section 1015(16), Appendix, 1940 Code of Alabama, Recompiled 1958. The preamble to Act No. 431 provides:

"To authorize and permit grocery stores to remain open on Sunday in each County in the State having a population of 500,000 or more according to the last or any succeeding federal census, provided any such grocery store does not have on duty in such stores more than four employees at any one time on Sunday and to provide for licensing such grocery stores by the license issuing officer of such County."

This brings us to the prosecution and conviction of Joe Simonetti and his appeal from such conviction. Appellant was issued a *license to operate a grocery store on Sunday* and was also issued a *license to operate a drug store* at the same place of business. *This is without dispute.*

Aside from the facts existing at the time of his arrest, we are confronted with the constitutional issue as to whether his conviction offends the Equal Protection Clause of the Constitution of the United States.

At all times pertinent to this case, there was no fixed or settled policy by the law enforcement officers of the City of Birmingham with respect to the enforcement of the "blue laws" of that city. The chief of police testified that they acted on complaints only. In sum, he testified that the city simply did not have the manpower to enforce the Sunday violations. He regarded Sunday violations to be "victimless" crimes. The Police Department acted on priorities and the priority cases involved crimes against the persons and the property rights of the citizens. Captain Chilcoat,

Chief of the Vice Squad, testified that it was not their policy to initiate any Sunday law violations on their own. They acted on complaints only.

Mr. Joe Simonetti operated a grocery store known as Southway Discount Center located at 342 Finley Avenue, West, on July 30, 1972, in the City of Birmingham, Alabama, at the time he was arrested. He had two shifts—one from 9 A.M. until 2 P.M., and the other from 2 P.M. until 6 P.M. The arresting officer arrived about 2 P.M. and found five cash registers in operation. Four of the cash registers were being operated by women and the fifth one was being operated by appellant's son. He found two young people sacking groceries and a produce man marking prices in the produce section. The produce man was not employed by appellant. He was appellant's retired uncle and just came to the store on his own volition. The arresting officer was not in the store more than ten minutes and before he left he saw one line of customers being directed to another check-out counter so as to leave only *four cash registers in operation including the one operated by appellant's son.* He did not wait for the morning shift to check their money receipts at the office so that the new shift could take over with the amount of money allowed each cashier to make change for the customers.

The arresting officer admitted that he did not have a complaint to investigate appellant's place of business but that he just came on his own which was in violation of the established policy of the police department to investigate Sunday violations only on complaints.

A short distance—less than 300 feet—from Southway Discount Center was the Farmers Market having some twenty-five stalls where vegetables of all kinds were sold to the general public and were the same kind of items sold in appellant's store. There was also testimony that more than four employees were on duty at the stalls in the Farmers Market. The arresting officer knew the Farmers Market was open and operating on the same Sunday that appellant was arrested but he did not visit the Farmers Market to see if they were in compliance with the "four-employee" ordinance. In addition to this witness, the chief of police testified that he knew the Farmers Market was open on Sundays and that he had never issued any orders for the arrest of any operator at the Market.

The City of Birmingham entered into written lease agreements with numerous lessees to operate businesses on Sundays. The City knew these businesses would operate on Sundays. It goes without saying that no police officer was to arrest any lessee or the employees of any lessee for operating on Sundays.

The City had a lease with the Dobbs Houses, Inc. to operate a Gift Shop at the Municipal Airport. This lease was for $24,533.15 due and payable on the date the lease was executed, plus a percentage of the gross receipts from the operation of the business on a monthly basis. The lessee was required to carry a public liability policy—$50,000 for one person, $150,000 for one accident, and $25,000 for property damage.

Similar leases were entered into to operate a miniature railroad at the Jimmy Morgan Zoo; Municipal Golf Courses; Food Concessions at the zoo, and at Vulcan Park, but at different amounts for the initial lease and at different percentages on the gross receipts.

Bowling centers were allowed to operate on Sundays and various and sundry other activities for the pleasure of the general public were permitted to be conducted on Sundays.

In short, the City of Birmingham has a pattern of not enforcing the "blue laws" on a non-discriminatory basis due, no doubt, to a shortage of manpower in the Police Department.

The Sheriff of Jefferson County conscientiously undertook to enforce the Sunday

closing laws in 1972–73 and was met with a lawsuit by Lawhon Funiture Company in the United States District Court for the Northern District of Alabama, Southern Division. In Judge Pointer's Findings of Fact and Conclusions of Law, he took note of some of the same establishments operating on Sunday that we have mentioned in this opinion. Judge Pointer went on to say:

"The question then, becomes, in order to make out the case, must the plaintiff prove intentional sort of malicious discrimination and enforcement, or is it sufficient if the plaintiff proves that whatever the reason or justification, nevertheless in actual fact it works out unequally and invidiously toward him or it. I think it is the latter. And if the Sheriff's Department, as I'm convinced under the evidence, cannot fully enforce this type of law throughout the entire county on a completely equal basis, then it should not be permitted to let its forces be directed as against one particular company in effect unequally, that is what it turns out to be, and again not from any intent to harm, but simply as the sheer result of the fact that there are other items, much more important that the Sheriff's Department could be doing ultimately than dealing with the victimless crime involving a number of its patrol cars in this type of investigative work. * * * Either you have got to do it more equally than you have done . . . or not do it."

Judge Pointer further said, "It may be that the Legislature will do something that will in effect make for a different problem in trying to enforce this very very difficult statute."

"I think it is very important that the Sheriff in effect would be free at his office, to be free to get on with things ultimately that are more important (than) in enforcing the blue law."

Judge Pointer's conclusions could well have been directed to the Birmingham Police Department as a caution against the discriminatory enforcement of the blue laws.

Several large chain drugstores, including Eckerd Drug Company, Liggett Lane Drug Company, Copeland Drugs which rented space from the Big B., were open and operating on Sundays without interference from the Birmingham Police Department at all times pertinent to this prosecution.

Typical of the non-drug items sold by these chain drug stores on Sundays are the following items as testified to by the manager of Eckerd Drug Company:

Folding Chairs
Paint
Garden Hoses
Oscillating Sprinklers
Thermo Chests
Kodaks, Cameras
Steel Wool Soap Pads
Portable Electric Fans
Sanyo Refrigerators
Electric Hair Setters
Loaf Bread
Pepsis—in cartons
Pepsi—Bottled, forty eight ounce
Red Diamond Tea Bags
Ice Milk
Half Gallon Containers Ice Milk
Dr. Scholl's Exercise Sandals
Aluminum Foil
Polaroid Film
Kodak Film
Tennis Shoes
Inflatable Beach Balls
Inflatable Swim Rings
Inflatable Air Mattresses
Inflatable Surf Riders
Badminton Sets
Car Cushions
Electric Ice Cream Freezers
Chlorox
Liquid Chlorox
Formula 409
Red Diamond Coffee
Perfumes
Electric Blenders
Electric Toasters
Electric Hair Dryers

Electric Skillets
Electric Ovens
Broilers
Fishing Rods
Fishing Lines
Lures
Hooks
Sinkers
Bobbers
Tackle Boxes
Magazines
Paperback Books
Greeting Cards
Birthday Cards
Cigarette Lighters
Cigarettes
Tobacco Products
Pipes
Pipe Lighters
Pipe Cleaners
Flea Collars
Stanback Powder
Ice Cream—Half gallon containers
Popsickles—12-pack package
Ice Cream Sandwiches—6-pack package
Deodorant
Hot Dog Buns
Tea and Coffee

It is readily apparent from a mere perusal of the above enumerated articles for sale and which are sold on Sundays constitute these large chain drugstores nothing more or less than glorified department stores operating under the guise of legitimate druggists simply because they are licensed druggists under the statute permitting operations on Sunday.

Over fifty years ago the Supreme Court of Alabama in Ex parte Stollenwerck, 201 Ala. 392, 78 So. 454, in treating this same problem, said:

"Of course, this statute, like all others, cannot be evaded by a mere pretense or subterfuge; one cannot pretend to be a druggist and to keep an open drug store on Sunday, when in fact and truth he is not a druggist and is not keeping an open drug store, but is keeping open store for the purpose of selling other goods or merchandise. The person to be within the exception must be a bona fide druggist and to be bona fide engaged in keeping open a drug store."

None of the operators or employees of these large chain drugstores were ever arrested for operating open stores or even warned that they were violating the blue laws. Many of the articles sold in the large chain drugstores were sold in appellant's drugstore. There was some evidence that drug items purchased from appellant's drugstore were co-mingled with the grocery items that customers had purchased and were passing through the check-out counters where the cash registers were in operation.

In Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220, the Supreme Court held:

"Though the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution."

In Griffin v. Illinois, 351 U.S. 12, 76 S. Ct. 585, 100 L.Ed. 891, the Supreme Court said, "A law nondiscriminatory on its face may be grossly discriminatory in its operation."

All the cases recognize that a heavy burden rests on the defendant to establish conscious, intentional discrimination, but if successful in sustaining that burden, the defendant will be entitled to a dismissal of the prosecution as a matter of law. From the facts as developed in the trial, we hold that appellant fully carried that burden.

In East Coast Lumber Terminal v. Town of Babylon, 2 Cir., 174 F.2d 106, Judge Learned Hand wrote: "It has indeed been the law for over sixty years that the (14) Amendment covers the unequal enforce-

ment of valid laws, as well as any enforcement of invalid laws", Yick Wo v. Hopkins, *supra*.

In Sunday Lake Iron Co. v. Wakefield, 247 U.S. 350–352, 38 S.Ct. 495, 62 L.Ed. 1154, the Supreme Court said: "The purpose of the equal protection clause of the Fourteenth Amendment is to secure to every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution *through duly constituted agents.*"

The Chief of Police testified that he personally received a complaint about appellant's place of business from one of the members of the City Council though he could not recall the name of the councilman.

All members of the City Council of the City of Birmingham filed affidavits in identical language (which were received in evidence by stipulation) that during their respective terms of office "I have never communicated, forwarded, or delivered, or had forwarded or delivered to either Mayor George W. Seibels or Chief James Persons, Police Chief for the City of Birmingham, or to any other representative of the Mayor's office or of the Police Department of the City of Birmingham, Alabama, or to any other member of the Council of the City of Birmingham any:

1. Complaint with reference to Southway Discount Center, Inc., 342 Finley Avenue, Southwest, Birmingham, Alabama, operating a business on Sunday.

2. Complaint with reference to Mr. Joe Simonetti, 342 Finley Avenue, Southwest, Birmingham, Alabama, for operating a business on Sunday.

3. Request for an investigation by the Police Department of the City of Birmingham, Alabama, as to Sunday business operations of Southway Discount Center, Inc., 342 Finley Avenue, Southwest, Birmingham, Alabama.

4. Request for an investigation by the Police Department of the City of Birmingham, Alabama, as to Sunday operations of Mr. Joe Simonetti."

The record before us reflects that when citizens would call the Police Department to complain about Sunday violations the only record made of such calls was on a handy scratch pad and the name of the caller was not recorded. As a matter of fact most of the callers were anonymous and *if* there was a follow-up investigation and no arrest made, the scratch pad found its way to the waste basket. The record further reflects that only *four arrests for Sunday violations were made in the year 1972, including appellant.*

Sunday closing laws have been assailed on constitutional grounds for years and have met with no success. Commenting on the constitutionality of the Sunday laws in general, Chief Justice Warren, speaking for the Court, in McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393, said:

"The present purpose and effect of most of (the Sunday laws) is to provide a uniform day of rest for all citizens; the fact that this is Sunday, a day of particular significance for the dominant Christian sects, does not bar the State from achieving its secular goals. To say that the States cannot prescribe Sunday as a day of rest for these purposes (public health, welfare, and recreation) solely because centuries ago such laws had their genesis in religion would give a constitutional interpretation of hostility to the public welfare rather than one of mere separation of church and State."

■ Compulsion by law of the acceptance of any creed or practice of any form of worship is strictly forbidden. The freedom to hold religious beliefs and opinions is absolute. The Legislature cannot compel church attendance and judicial fiats cannot fill the pews of any denominations. Religion is a matter of conscience between man and God.

■ Police officers are sworn to uphold and enforce all laws within their jurisdiction, including the blue laws, and when they adopt a policy of acting *only on complaints,* not warrants issued by neutral and detached magistrates based upon probable cause, the police officers unwittingly become the "agents" of anonymous callers in making investigations and arrests in a discriminatory, shocking and appalling manner. The policy adopted by the Birmingham Police Department in not "initiating" investigations of Sunday violations is a complete abdication of their sworn duties as law enforcement men. They permitted businesses in direct competition with appellant to remain open for business on Sundays and, thereby, go unwhipped of justice while hauling appellant into court to be fined and incarcerated. A great number of these Sunday operations were under the avowed auspices and approval of the Birmingham City Council as witness the many ordinances they passed to authorize the execution of written leases for Sunday operations.

■ We find no trouble in concluding that appellant's constitutional rights under the Equal Protection Clause of the Fourteenth Amendment have been blatantly violated ·and that his arrest and conviction were brought about by invidious discrimination in the unequal enforcement of the blue laws of the City of Birmingham. To allow this conviction to stand would be a grave miscarriage of justice and would be wrong and unjust.

But more should be said in the light of the case of Caiola v. City of Birmingham, 288 Ala. 486, 262 So.2d 602, upholding the constitutionality of Act 431, 1966, Special Session, page 576, which is the "four employees" Act as relates to grocery stores keeping open store on Sunday. We quote from this case:

"Counsel for appellant argues that many of the convenience stores are part of a chain, and permitting them to operate would in effect allow the chain to have many more employees on duty on Sunday than the operation of a single super market that would have on duty more than the four employees allowable under Act 431.

"While this argument is not without some basis, the fact remains that should one super market operate on Sunday, the competitive nature of the operation of the grocery store business would necessarily compel many, and probably most, of the super market grocery stores to operate on Sunday. This very fact, we think, supports the validity of the distinction made in Act 431 as to the types of grocery stores permitted to operate on Sunday."

The trouble we find with Act 431 is that it is not clear as to what is meant by the term "only those stores that have no more than four employees on duty at any one time on Sunday", as applied in the instant case.

At the time of appellant's arrest his son, who was 19 years of age, was operating one of the cash registers checking customer's purchases. Present was appellant's retired uncle who was not on the payroll. He was engaged in marking prices in the produce department on a purely voluntary basis. Present also were other children of appellant though the evidence is not clear whether they were engaged in any activities pertaining to the operation of the grocery store. Does the phrase "four employees" include the owner and members of his family who just happen to be present when the arresting officer entered the store at the very moment that the morning shift was winding up its duties to clear the way for the evening shift to take over? Common sense dictates that a change in shifts takes more than ten minutes that the officer said he was in the store. Does the word "employee" include a clean-up man, bag boys, and security guards?

The word "employee" is vague and uncertain and should not rest in speculation and doubt in any criminal statute where a

man's freedom and liberty are involved. If this act, though valid on its face (Caiola v. City of Birmingham, supra) is to be made clear and enforceable, it should be amended by the Legislature to remove glaring ambiguities. We *expressly invite and urge* the Legislature to rewrite Alabama's Sunday closing laws.

The following excerpts from Gayden v. State, 262 Ala. 468, 80 So.2d 501, spells out what we are saying in far better language than we can employ:

"Indictments must always conform to the mandates of our organic law. The emphasis in our cases 'that in all criminal prosecutions, the accused has the right * * * to demand the nature and cause of the accusation' now § 6 of the Constitution of 1901—is not meaningless tautology, but one of the cornerstones of our Bill of Rights. * * *

\* \* \* \* \* \*

"We are further restrained in this case by the requirements of the Fourteenth Amendment to the Constitution of the United States. The following utterances by our Federal courts are pertinent: 'No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.' Cole v. State of Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644. 'The petitioner charged that he had been denied any real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process * * *.' Smith v. O'Grady, Warden, 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859. 'An intelligent and full understanding by the accused of the charge against him is a first requirement of due process.' Bergen v. United States, 8 Cir., 145 F.2d 181, 187.

"Regardless of some ill-considered, loose expressions in some of the cases, the law is and always has been that it is not enough to charge against a defendant a mere legal conclusion as justly inferential from facts not set out in the indictment. United States v. Almeida, 24 Fed.Cas. pages 775, 776, No. 14,433.

"'In order to properly inform the accused of the "nature and cause of the accusation," within the meaning of the constitution and of the rules of the common law, a little thought will make it plain, not only to the legal, but to all other educated, minds, that not only must all the elements of the offense be stated in the indictment, but that also they must be stated with clearness and certainty, and with a sufficient degree of particularity to identify the transaction to which the indictment relates as to place, persons, things, and other details. The accused must receive sufficient information to enable him to reasonably understand, not only the nature of the offense, *but the particular act or acts touching which he must be prepared with his proof; and when his liberty, and perhaps his life, are at stake, he is not to be left so scantily informed as to cause him to rest his defense upon the hypothesis that he is charged with a certain act or series of acts, with the hazard of being surprised by proofs on the part of the prosecution of an entirely different act or series of acts,* at least so far as such surprise can be avoided by reasonable particularity and fullness of description of the alleged offense.' (Italics supplied.) United States v. Potter, 1 Cir., 56 F. 83, 89."

■ If Act 431, supra, had been first presented to this Court to determine if it met constitutional standards, we would have been hard put to find that the "four employees" restriction was based on a rational and valid classification to reach the end sought in the Legislative declaration of policy pertaining to the general welfare and public health of the State and its people. If the decision of the Alabama Supreme Court rests on "moral grounds",

which is tenuous at best, then we do not believe that a limitation or restriction to five, six, seven or even eight employees on duty at any one time on Sunday would be morally corruptible. The failure of the Legislature to clearly define the "four employees" restriction renders the act vague, uncertain, indefinite, unworkable and unenforceable without resorting to vexatious arrests and prosecutions by those who are unwilling to try and enforce a very difficult law on a nondiscriminatory basis.

We believe that if the law, all laws, is *enforced equally* and *justice is dispensed with an even hand,* and on a nondiscriminatory basis, all citizens will maintain a high regard and a lofty respect for our Court system as administered under the Constitution. If it can't be done in this fashion, then it must not be done at all.

It may be a violent presumption that the courts are not supposed to be ignorant of that which everybody knows; and everybody in this State knows one can go almost anywhere in this State on Sundays and purchase any article one may desire. We indulge this presumption with the knowledge that the Sunday closing laws are not uniformly enforced.

As the Supreme Court of the United States said In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368, "Civil labels and good intentions do not themselves obviate the need for criminal due process safeguards".

On the record before us, we conclude that appellant was the victim of invidious discrimination in the attempted enforcement of the "blue laws" of the City of Birmingham, and that he was denied the rights guaranteed to him under the Equal Protection Clause of the Fourteenth Amendment.

Accordingly, the judgment of conviction is reversed, the complaint is dismissed, and appellant is discharged.

Reversed and rendered.

TYSON, and DeCARLO, JJ., concur; TYSON, J., files opinion.

CATES, P. J., and BOOKOUT, J., dissent.

TYSON, Judge (concurring).

The proof offered by the City of Birmingham in support of its complaint against the appellant is, in my judgment, tenuous at best. The officer in question came in on Sunday afternoon while a "shift change" was in progress. One line of customers was being closed, and the other customers directed to the lines under other persons. The officer did not determine sufficiently, in my judgment, who were and were not "employees" in the instant cause.

Equally significant are the admissions on the part of the City of Birmingham "of selective law enforcement" due to a shortage of man power. The details of this are set forth in the comprehensive opinion of my distinguished brother, Judge Harris, in this cause. I join in his call upon the Legislature of Alabama to further define the meaning of the terms "employee" and "four employees" allowable under Act 431. See Caiola v. City of Birmingham, 288 Ala. 486, 262 So.2d 602.

In the instant cause the appellant was clearly licensed as a "convenience store" for the operation of such a store on Sunday. Further, he had a legitimately licensed pharmacy open and under the supervision of a registered pharmacist during business hours. Both aspects of this operation had been approved by appropriate inspection.

It seems incongruous for one roof to have a label "drug store" and sell the items enumerated in my brother's opinion, and yet next door deny the protection of the law to another roof labeled "grocery store" with four or less employees and a licensed pharmacy therein.

I therefore join in the reversal and rendering of this cause.

BOOKOUT, Judge (dissenting).

The Court of Criminal Appeals was established and its jurisdiction fixed by Act No. 987, Acts of Alabama 1969. Section 10 of that act states in part, "The decisions of the supreme court shall govern the holdings and decisions of the courts of appeals, . . . ."

The Supreme Court of Alabama has upheld both Title 14, Section 420, Code of Alabama 1940 and Act No. 431, Acts of Alabama 1966, Second Special Session, approved September 12, 1966, the Sunday closing laws relating to the state generally and to counties having a population over 500,000 or more, respectively. Lane v. McFadyen, 259 Ala. 205, 66 So.2d 83; Caiola v. City of Birmingham, 288 Ala. 486, 262 So.2d 602.

In the case of Reynolds v. McFadyen, 259 Ala. 235, 66 So.2d 89, Justice Lawson, speaking for the Supreme Court, held that the petitioner in that case was not entitled to be discharged on habeas corpus on the basis of parol proof going to show the arbitrary and discriminatory manner in which the Sunday closing laws of the city of Mobile were administered by the law enforcement officials of that city.

That Court has also held that the legislative classification which includes grocery stores is not arbitrary even though it may result in some inequities. Langan v. Mobile Winn-Dixie, Inc., 277 Ala. 583, 173 So.2d 573.

The sole question before this court, therefore is whether there has been an unconstitutional application of the Birmingham city ordinance enacted pursuant to Act No. 431, supra.

Much evidence was adduced to the effect that various types of business establishments in Birmingham remained open on Sunday, i. e. variety type drug stores, bowling alleys, and concession stands at the municipal airport, city zoo, Vulcan Park and municipal golf courses. However, there was no substantial showing of

mass violations of the ordinance by grocery stores and supermarkets nor a complete failure by city authorities to enforce the ordinance against grocery stores and supermarkets. To the contrary, evidence was introduced as to surveys or investigations being made around Birmingham which showed a general compliance with the Sunday closing ordinance by grocery stores. Convenience stores with no more than four employees are exempt under the ordinance and under Act No. 431, supra, and were not considered.

The Alabama Supreme Court in a recent lengthy opinion by Justice Bloodworth held that failure by the state to enforce truck weight statutes over a long period of time did not invalidate those statutes nor prevent law enforcement officers from beginning to enforce such long neglected laws. Department of Public Safety v. Freeman Ready-Mix Co., 292 Ala. 380, 295 So.2d 242.

There is bound to be some inequity in enforcement of any statute which is designed to regulate the conduct of a large number of people. To follow the reasoning of the majority in this case would invalidate any conviction on a showing by a defendant that the police did not arrest, or were not staffed to arrest, every single person violating a statute similar in nature to the one under which he was charged.

I am not convinced from the facts of the instant case that the enforcement complained of was malicious in nature or amounted to such an invidious discrimination between grocery store operators as to justify this court in departing from established precedent to judicially rewrite the Sunday closing laws.

CATES, P. J., joins in this dissent.

CATES, Presiding Judge (dissenting):

I can't see how two wrongs make a right. Because a city doesn't have enough policemen should admitted law breakers go

free? The fact that the city winks at its concessionaires does not confer a liberty on others to break a *State* law. Simonetti is patently in violation of the basic blue law, Code 1940, T. 14, § 420. This case does not involve the constitutionality thereof.

Martin Luther postulated the connubial immiscibility of Theology and Law. Today we collide with so-called "felt necessity" as expressed by our Legislature in Act No. 431, approved by the Governor, September 12, 1966.

This statute, unlike most others, contains a declaration of a legislative finding and policy. The heart of this declaration appears to be (1) a public necessity to buy groceries on Sunday in Jefferson County and (2) that no more than four employees can simultaneously be on duty in a store selling groceries. Such specious classification is facially discriminatory.

Nowhere does this loophole statute mention "convenience stores." However, in Caiola v. City of Birmingham, 288 Ala. 486, 262 So.2d 602, such a distinction was legitimized. The opinion therein fails, among other things, to recognize the danger of shoplifting and robbery in a store with only four employees on duty. The rationale of *Caiola,* supra, should not prevail today.

Even if the enforcement of a law is selective, it does not necessarily follow that this is unconstitutionally invidious discrimination. Selective or random enforcement may occur when the meaning or constitutionality of the law is in doubt and a test case is needed.

Such enforcement may also be justified when examples are sought in order to deter other violators, as part of a bona fide pattern of general enforcement so that general compliance will follow. Only when the enforcement discriminates against the persons prosecuted, without any intention to follow up with general enforcement against others, may a constitutional violation be found.

On this record I cannot see the malicious and uneven enforcement denounced in Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220.

Birmingham is a city of over 300,000 persons. We are not advised as to what the census of 1970 shows as to the number of retail establishments. The testimony of the chief of police and others that law enforcement is a vast undertaking of a Sisphyean magnitude is no reason to put in the principle of desuetude. Otherwise, laws such as those against illegal liquors and drugs (e. g., marihuana) could well be said to be repealed because of the impossibility of enforcement. Law stands as man's moral monument.

To show that the police are picking on him the defendant has the burden, inter alia, to show that the constabulary are acting with malice toward him. See People v. Utica Daw's Drug Co., 16 A.D.2d 12, 225 N.Y.S.2d 128; and Two Guys From Harrison-Allentown, Inc. v. McGinley, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551. That burden I don't think Simonetti has satisfied. He is entitled to equal protection of law, not protection *from* law.

With all the hue and cry for law and order our police must, in cases of non violent misdemeanors and ordinance breaches, necessarily rely on citizens to help, either by lawful arrests or by making sworn complaints. But an officer who sees a law broken is duty bound to bring the culprit to book.

I respectfully dissent.

"State v. Cranston, 59 Idaho 561, 85 P.2d 682 (1938):

"If the Sunday closing law is unwise, antiquated, unenforced or unenforceable (all non-judicial questions) the legislature is the place for those to go who are dissatisfied and there disclose their grievances. More appeals to the lawmaking bodies for amendments and repeals of what are deemed by many to be ineffective or bad laws and less urgency

upon courts to modify or hold invalid such laws would go a long way toward the orderly and acceptable administration of all laws."

## ON REHEARING

Application for rehearing overruled.

HARRIS, TYSON and DeCARLO, JJ., concur.

CATES, P. J., and BOOKOUT, J., dissent.

DeCARLO, Judge (concurring):

My learned brother in writing for a majority of this court did not find contrary to Caiola v. City of Birmingham, 288 Ala. 486, 262 So.2d 602; Reynolds v. McFadyen, 259 Ala. 235, 66 So.2d 89; Lane v. McFadyen, 259 Ala. 205, 66 So.2d 83, or Langan v. Mobile Winn-Dixie, Inc., 277 Ala. 583, 173 So.2d 573. He found a discrimination on behalf of the local authorities in their unequal application of the law.

The majority opinion points to the case of John Lawhon Furniture Company, in Jefferson County, wherein Federal Judge Sam Pointer enjoined the Jefferson County Sheriff's Department from initiating arrests on its own against the furniture company.

The facts of the Lawhon matter are not as persuasive as those involved here. Simonetti's arrest did not result from a complaint, but solely because an officer singled him out. In Lawhon no attempt at compliance with the Sunday Blue Law was shown.

To avoid prosecution, Simonetti's only recourse would have been to close the store until the shift change was completed. I don't believe the legislature intended for this law to be enforced in such a stringent manner.

In Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220, the petitioner had been convicted of violating an ordinance that made it a misdemeanor to maintain a laundry without a license from a board of supervisors.

Although the U. S. Supreme Court did not hold the statute void, it did condemn its application and held the board had discriminated against petitioner and other people similarly situated by denying them permits while granting them to others.

The ordinance in Yick Wo, supra, required the exercise of some discrimination by the licensing authority, and the Supreme Court held that the supervisors had abused that discretion.

The ordinance sought to be enforced against Simonetti, by the City of Birmingham, leaves no room for an exercise of discretion via selective enforcement.

We have seen by the testimony presented that the law was not generally enforced but enforced on a complaint basis only. Admittedly, appellant's arrest did not even result from a complaint.

Hence, we have a similar discretion being abused by the City, when they arbitrarily administer an ordinance without any general scheme of enforcement.

A serious or heinous crime is not involved here. What is involved is a victimless crime, resulting from a violation of the City's Sunday Closing Law. Simonetti was engaged in a lawful grocery business just as the petitioner in Yick Wo, supra, was engaged in laundering. There is a distinction between extending protection from discriminatory enforcement to appellant and extending it to those obviously violating our drug and liquor laws.

The conclusion that the City's action must be even-handed seems inescapable and though there is no right to violate a city ordinance, there is a right to equal treatment in its enforcement. City of Covington v. Gausepohl, 250 Ky. 323, 62 S.W.2d 1040.

We agree that selective enforcement per se is not constitutionally impermissible, however, when that selective enforcement is designed to prosecute a person without any intention of general enforcement, then it is a violation. People v. Utica Daw's Drug Co., 16 A.D.2d 12, 225 N.Y.S.2d 128.

Selective enforcement implies discriminatory enforcement. It cannot be overlooked that an acquittal of Simonetti would not bar a future conviction, where enforcement on a non-discriminatory basis is undertaken.

The majority opinion did not intimate the Sunday Closing Law was unconstitutional nor did it find this ordinance should not be enforced against appellant because of desuetude or laxity. On the contrary, it criticized the uneven application of the law.

Without question, the majority holding invited a definitive interpretation of the law by our legislature and a general enforcement of the ordinance by the City—nothing more.